**Balkrishna V. KALE and Asha B. Kale, Appellants,**

**v.**

**Henderson Ray PALMER, Sr., May Alice Palmer, Robert E. Giblin, Gabor Racz, M.D., and Patricia Chamblin, Appellees.**

No. 09–89–041 CV.

Court of Appeals of Texas, Beaumont.

June 14, 1990.

Rehearing Denied July 10, 1990.

**630**

Wayne H. Paris, Houston, for appellants.

Bob Gibbins, Gibbins, Steve Gibbins, Gibbins, Winckler & Bayer, Austin, Russell Serafin, Vinson & Elkins, Richard A. Sheehy, Cook, Davis & McFall, Houston, for appellees.

## OPINION

WALKER, Chief Justice.

This suit was brought by appellants as a separate action for alleged injuries suffered by appellants when a verdict was entered against Dr. Asha B. Kale for medical malpractice in the case styled *Henderson Palmer, Sr., et al. v. St. Elizabeth Hospital, et al.* "Medical Malpractice case". Appellants allege in the First Amended Petition and Supplemental Petition, that appellees conspired to present fabricated evidence to the jury in the medical malpractice case, which included the verdict against Dr. Asha B. Kale. Appellees, Mr. and Mrs. Palmer, were plaintiffs in the medical malpractice case. Appellee, Dr. Racz, was a testifying expert on behalf of the Palmers.

Mr. and Mrs. Palmer brought suit against Dr. Balkrishna V. Kale, Dr. Asha B. Kale and St. Elizabeth Hospital for negligence in connection with the death of their daughter, Cynthia Palmer. Henceforth, we shall refer to Balkrishna V. Kale, M.D. as B. Kale and Asha B. Kale, M.D. as A. Kale, which was done throughout the trial. Cynthia Palmer died shortly after giving birth to her son in St. Elizabeth Hospital while she was under the care of Dr. B. Kale and Dr. A. Kale. Appellee, Robert Giblin, represented the Palmers in the medical malpractice case and appellee, Patricia Chamblin, represented St. Elizabeth Hospital.

Prior to trial, the Palmers settled with St. Elizabeth Hospital and Dr. B. Kale was dismissed from the case. Also prior to trial, appellee, Dr. Racz, acting as an expert on behalf of Mr. and Mrs. Palmer, stated his opinion that Cynthia Palmer died as a result of aspirating vomitus in the delivery/operating room.

During trial, Mr. and Mrs. Palmer introduced evidence (including the testimony of Dr. Racz on this issue), that Cynthia Palmer died as a result of aspirating vomitus in the delivery/operating room. Subsequently, the jury found that Cynthia Palmer aspirated vomitus in the delivery/operating room and decided verdict against Dr. A. Kale. The trial court entered judgment on the verdict from which none of the parties appealed.

On June 2, 1988, appellants, who are husband and wife, sued Mr. and Mrs. Palmer, Robert Giblin, Patricia Chamblin and Dr. Racz for fraud and conspiracy to defraud them by interjecting allegedly fabricated evidence concerning the aspiration issue into the medical malpractice case, thereby inducing a verdict against Dr. A. Kale. Mr. and Mrs. Palmer and Dr. Racz timely filed answers and counter-claims against appellants. Mr. and Mrs. Palmer then filed Special Exception to Plaintiff's Original Petition and thereafter, appellants filed their First Amended Petition and Supplemental Petition. All of the defendants then filed Motions for Summary Judgment

on several independent grounds. Appellants filed responses to these motions.

On December 6, 1988, Judge Gary Sanderson entered judgment for all defendants stating that defendants' Motions for Summary Judgment were "in all things granted." On December 8, 1988, Judge Sanderson severed the Palmers' and Dr. Racz's counter-claim from the present action. Appellants perfected their appeal to this Court on December 16, 1988.

■ Based upon the nature of the summary judgment entered by the trial court, this Court need only determine whether entry of summary judgment was proper on one of the independent grounds asserted by appellees in order to affirm the judgment of the district court. A defendant is entitled to prevail on a motion for summary judgment if said defendant conclusively establishes the absence of an essential element of the plaintiff's cause of action. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

Appellants contend that their action before the trial court was an action for fraud and conspiracy to defraud. All appellees before us contend that plaintiffs' cause action is not a cause of action for fraud and conspiracy but only alleges a cause of action for malicious prosecution.

In 1983, Cynthia Palmer entered St. Elizabeth Hospital for a Cesarean Section Delivery. Balkrishna V. Kale, M.D., performed the cesarean and Asha B. Kale, M.D., was the anesthesiologist. Several hours after the operation, Cynthia Palmer died. Henderson Palmer and May Alice Palmer sued St. Elizabeth Hospital and B. Kale for the death of Cynthia Palmer. Later, the plaintiffs added A. Kale as a defendant. In March of 1986, B. Kale was dismissed with prejudice from the lawsuit.

Before the Palmer case went to trial, St. Elizabeth Hospital and the Palmers entered into a release, settlement agreement, and an indemnity agreement in which St. Elizabeth Hospital paid the Palmers a total settlement package in excess of $500,000.00 in exchange for a full release from plaintiffs.

The Palmer case proceeded to trial with only the Palmers and A. Kale as parties. St. Elizabeth Hospital was not a party at the time of trial. The Palmers, plaintiffs, alleged A. Kale was liable because Cynthia Palmer had aspirated vomitus in the operating/delivery room of the hospital and died as a result of complications from the aspiration. In answer to question number one, the jury in the Palmer case found "That Cynthia Palmer aspirated vomitus in the operating/delivery room." The jury then found in answer to question number two that A. Kale was negligent "In failing to diagnosis aspiration pneumonitis ... in failing to inform the surgeon, Dr. B. Kale about the potential for aspiration pneumonitis ... in failing to inform the nurses on the floor of the potential for aspiration pneumonitis...."

The jury's verdict included both actual and exemplary damages against A. Kale. However, because A. Kale received credit for the settlement amount paid by St. Elizabeth Hospital, A. Kale was not obligated to pay any actual damages, but only $50,000.00 in exemplary damages. The jury's verdict was incorporated into a final judgment and that final judgment was never challenged by any post judgment motions or appeal and said judgment is now final and unappealable.

■ The true nature of a lawsuit depends on the facts alleged in the petition, the rights asserted, and the relief sought, and not on the terms used to describe the cause of action. *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774, 775 (1955); *Royal v. Moore*, 580 S.W.2d 159 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Hudgins v. Krawetz*, 558 S.W.2d 131 (Tex.Civ.App.—San Antonio 1977, no writ); *Scott v. Whitaker Pipeline Constructors, Inc.*, 517 S.W.2d 406 (Tex.Civ.App.—Austin 1974, no writ).

In this case, plaintiffs' fifteen page First Amended Petition alleges that the defendants agreed to file and prosecute against A. Kale a groundless claim that Cynthia Palmer aspirated vomitus in the operating or delivery room and, as a result, Ms. Palmer died from the aspiration. Plaintiffs basi-

cally summarize their pleadings on page 15, where they state the following:

> It was agreed amongst the defendants affirmatively and tacitly that the course of action in the wrongful death lawsuit would be to interject into the proceeding the fabricated theory of aspiration, knowing that full well that such theory was false and that there was no basis in fact for raising such a theory.

Even though plaintiffs allege the elements of fraud and conspiracy, they allege that the purpose of the conspiracy was to prosecute a groundless theory of recovery against Dr. A. Kale.

■ As the Courts of Texas have defined it, "The gravamen of an action for malicious prosecution is improperly making a party the subject of legal process to his detriment." *Martin v. Trevino*, 578 S.W.2d 763, 766 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Defining still further, malicious prosecution is "the instituting of a criminal prosecution or a civil suit filed maliciously and without probable cause." *Morris v. Hargrove*, 351 S.W.2d 666, 667 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.).

In *Smart v. Carlton*, 557 S.W.2d 553 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.) plaintiff alleged that a lawsuit was filed maliciously for vengeance and harassment and stated that his cause of action was for abuse of process. The plaintiff later claimed that the lawsuit was for legal malpractice. The court held that despite these claims, the lawsuit was for malicious prosecution and denied the cause of action because the original lawsuit did not terminate in plaintiff's favor.

■ It appears to us, that by alleging that appellees interjected a fabricated theory of aspiration, knowing that it was false and had no basis in fact, the appellants are essentially saying that appellees instituted a civil suit without probable cause and improperly made Dr. A. Kale the subject of legal process to her detriment. We are hard put to find anything under Texas law which would permit appellants to state a cause of action for fraud or conspiracy under our present case.

We must conclude that this is malicious prosecution regardless of other words or phrases used in appellants' pleadings in an effort to make it otherwise.

■ "It is fundamental that in the absence of a statute to the contrary, an unsuccessful litigant who has lost his case because of perjured testimony, cannot maintain a civil action against the person who commits the perjury." There is no statutory provision in Texas creating such a right. *Horlock v. Horlock*, 614 S.W.2d 478 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (affirm trial court's refusal to submit plaintiff's requested special issues for fraud based on misrepresentation by defendant in former divorce trial); *Chandler v. Gillis*, 589 S.W.2d 552, 554 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.) (affirm summary judgment against plaintiff who alleged "civil wrong" based upon former perjured testimony); *Morris v. Taylor*, 353 S.W.2d 956, 958 (Tex.Civ. App.—Austin 1962, writ ref'd n.r.e.) *cert. denied*, 371 U.S. 842, 83 S.Ct. 71, 9 L.Ed.2d 78 (1962) (affirm summary judgment against plaintiff alleging malicious prosecution based upon perjured testimony in former suit).

■ The basis of a cause of action for conspiracy is damages for the commission of the wrong that injures another, and not the conspiracy itself. *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806 (Tex.1979). Applying that principle to our case and particularly to Dr. Racz, who allegedly testified fraudulently, there can be no actionable conspiracy by the Palmers based upon the same act.

The cases cited by appellants supporting their position that Texas recognizes such a cause of action, involves fraudulent real estate or lease transactions or fraud during post verdict proceedings and not fabricated evidence presented in a former jury trial.

■ It would be a dangerous precedent for this Court to agree that appellants have a cause of action for civil damages in the present context and the effect such a holding would have regarding the finality

of judgments and the rights of litigants to develop a claim or defense would be devastating. The consequences of permitting every losing litigant a second trial based solely on allegations of false testimony in the prior proceeding would create a staggering redundancy of litigation. Texas provides sufficient legal recourse for unjust proceedings by granting the rights of direct appeal or the right to maintain a cause of action for malicious prosecution. It is obvious to this Court that appellants could not maintain an action for malicious prosecution and have attempted through fraud and conspiracy allegations to circumvent the law concerning malicious prosecution. To recover for malicious prosecution, plaintiffs would have the burden of pleading and proving the following:

1. A civil judicial proceeding was previously filed;
2. The defendant in the malicious prosecution case caused the original suit to be filed;
3. The commencement of the original proceeding was malicious;
4. No probable cause existed for the filing of the original proceeding;
5. Termination of the original suit in favor of the party prosecuting a later malicious prosecution action; and
6. Damages conforming to the legal standards under Texas law.

It is apparent that appellants could not meet these requisites and have sought the same result through allegations of fraud and conspiracy.

Appellee, Patricia Chamblin, who was the attorney representing St. Elizabeth's Hospital, contends in her brief that the Kales are collaterally estopped from re-litigating the issue of whether Cynthia Palmer aspirated vomitus in the operating/delivery room. Ms. Chamblin contends that essential to the Kales' case is a finding that the testimony regarding aspiration vomitus was false, for appellees cannot be liable for fraud and conspiracy to cause truthful testimony to be presented to the jury.

Fraud requires a false representation and conspiracy requires an underlying wrong or tort. The civil conspiracy case

the Kales attached to their response to Chamblin's motion for summary judgment makes this clear. *Rogers v. R.J. Reynolds Tobacco Co.*, 761 S.W.2d 788, slip opinion number 09–87–120 CV (Tex.App.—Beaumont October 6, 1988). The *Rogers'* Court quotes a Texas Supreme Court case as follows:

> There must be an agreement or understanding between the conspirators to inflict a wrong against, or injury on, another. . . .

Quoting *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex.1969).

> While the Court in *Rogers* says the object of the conspiracy need not involve a "separate, distinct intentional tort", it must involve an "underlying tort", which can be a tortuous breach of a legal duty.

Only if the Kales prove that the aspiration testimony is false, can appellees be liable for fraud or conspiracy. In other words, to recover in this case, the Kales must prove to a jury that Cynthia Palmer did not aspirate vomitus in the operating/delivery room.

A jury has already decided this issue. The Palmer jury found in answer to question number one "that Cynthia Palmer aspirated vomitus in the operating/delivery room". This finding was set out in the final judgment in the malpractice suit and was not questioned by any post-judgment motion or by appeal. Dr. A. Kale was represented by counsel and had an opportunity to cross-examine witnesses, and refute or rebut the evidence on aspiration, including asking the witnesses about prior contacts with appellees or their agents. Dr. A. Kale had a full and fair opportunity to litigate the aspiration question and a litigant who has had a full and fair opportunity to litigate an issue is collaterally estopped from re-litigating the same issue in a subsequent case. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816 (Tex.1984); *Wilhite v. Adams*, 640 S.W.2d 875 (Tex. 1982).

In *Wilhite*, the Texas Supreme Court stated the following regarding collateral estoppel:

Under a plea of collateral estoppel, essential issues of fact determined and adjudged by a court of competent jurisdiction are binding in a subsequent action between the same parties and those who stand in privy with them. In other words, this doctrine precludes the relitigation of identical issues actually litigated in a previous action, even though the subsequent action is based upon a different cause action. Collateral estoppel does not require that all the issues in the subsequent action be the same as those in the prior suit. It merely precludes the same issues from being re-urged.

The Kales seek to re-urge the question of whether Cynthia Palmer aspirated vomitus. Appellants argue that because the fraud and conspiracy claims were not presented in the Palmer case, the issues related to those claims are not barred by collateral estoppel. The issue of whether Cynthia Palmer aspirated vomitus has to be re-litigated in this case to prove plaintiffs' (appellants') cause of action. This is precisely what collateral estoppel is designed to prevent.

Appellants' final argument against collateral estoppel is that Dr. B. Kale cannot be collaterally estopped because he was not a party to the Palmer judgment or in privity with Dr. A. Kale.

■ Collateral estoppel no longer requires mutuality of parties, but only requires that the party against whom the doctrine is applied have been a party or privy to the cause in which the issue was litigated. *Hardy v. Fleming*, 553 S.W.2d 790 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). Dr. A. Kale was indisputably a party to the Palmer lawsuit. Dr. B. Kale, while not a party to that suit at the time of trial, is in privity with Dr. A. Kale because his interests are identical to hers, and because his rights, if any, are derivative of Dr. A. Kale's rights, if any.

Dr. B. Kale claims he is harmed by the Palmer judgment because it is a community debt. Thus, Dr. B. Kale's cause of action in this case, if it exists at all, depends upon the effect of the prior judgment. Dr. B. Kale seeks to avoid the issue preclusive effect of that judgment by claiming that he is not bound by it merely because he is Dr. A. Kale's husband, when being Dr. A. Kale's husband is the only fact which could possibly entitle him to bring this action.

■ For purposes of collateral estoppel, "privity connotes those so connected in law with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Mendez v. Haynes Brinkley & Co.*, 705 S.W.2d 242 (Tex.App. —San Antonio 1986, writ ref'd n.r.e.). "Additionally, where the rights and liabilities of a party are derivative, a judgment binding a party from whom the rights or liabilities are derived may be set up as a bar in the second suit." *Lemon v. Spann*, 633 S.W.2d 568, 570 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). *See also, Siratt v. City of River Oaks*, 305 S.W.2d 207 (Tex. Civ.App.—Fort Worth 1957, writ ref'd); *Gorelick v. Harrision County*, 720 S.W.2d 835 (Tex.App.—Texarkana 1986, no writ).

Dr. B. Kale's rights and interest, if any, are identical to Dr. A. Kale's. Both seek damages for an alleged fraudulent judgment; Dr. A. Kale in her own right, Dr. B. Kale as part of the community estate. Both are based on identical facts, and identical alleged injuries. Both require the re-litigation of whether Cynthia Palmer aspirated vomitus. Dr. A. Kale represented the Kale community in the Palmer trial and by claiming the Palmer judgment is a community debt, Dr. B. Kale admits that Dr. A. Kale represented the community in the Palmer case.

Furthermore, Dr. B. Kale's claim is derivative to Dr. A. Kale's claim. Dr. B. Kale claims that he was injured by the judgment against Dr. A. Kale. Thus, Dr. B. Kale is claiming through the same judgment as Dr. A. Kale. This judgment, and its necessarily litigated facts, can be set up as a defense to Dr. A. Kale's claim as well as Dr. B. Kale's derivative claim. *Siratt, supra,*

at 209; *Gorelick, supra,* at 835; *Lemon, supra,* at 570.

All appellees in their respective motions for summary judgment, contended that the action taken against them by appellants was not such an action as maintainable under Texas law to which we agree as apparently did the trial court. As previously stated, the Court need only determine that entry of summary judgment was proper on one of the independent grounds asserted by appellees in order to affirm such summary judgment and we find the above stated ground was indeed proper.

■ Appellants attacked appellees' motions for summary judgment as an improper way of attacking appellants' cause of action for alleged damages. Appellants contend that such matters should be raised by special exception and hence a motion for summary judgment based upon this procedure should be denied citing *Texas Department of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex.1974).

We do not agree with appellants' position. Mr. and Mrs. Palmer specially excepted to the allegations contained in appellants' Original Petition, thereby affording appellants the opportunity to amend their pleadings. However, appellants' Amended Petition and Supplemental Petition still fail to state a permissible cause of action under Texas law. By continuing to rely on allegations that fraudulent testimony resulted in the adverse jury verdict to support a claim of fraud and conspiracy, appellants' pleadings affirmatively plead facts negating these claims. Thus, appellees were not required to specially except to appellants' pleadings before moving for summary judgment. *Chandler v. Gillis,* 589 S.W.2d 552 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.).

We hold that the trial court did not err in granting each of the appellees' respective Motions for Summary Judgment and such action by the trial court is hereby affirmed.

AFFIRMED.